UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLEISCHER STUDIOS, INC., <br><br>             Plaintiff, <br><br>       v. <br><br> A.V.E.L.A., INC. d/b/a/ ART & VINTAGE ENTERTAINMENT LICENSING AGENCY, ART-NOSTALGIA.COM, INC., and X ONE X MOVIE ARCHIVE, INC., and LEO VALENCIA, <br><br>             Defendants. | CV 06-6229 ABC (MANx) <br><br> ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

Pending before the Court are the following Motions: Plaintiff Fleischer Studios, Inc.'s ("Fleischer") Motion for Summary Judgment (docket no. 177), and Defendant A.V.E.L.A., Inc., et al.'s ("Defendants") Motion for Summary Judgment (docket no. 175). The parties filed Oppositions and Replies. The Court finds these matters appropriate for resolution without oral argument and therefore **VACATES** the hearing set for November 19, 2012. See Fed. R. Civ. P. 78, Local Rule 7-15. For the following reasons, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendants' Motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This matter is before the Court following the Ninth Circuit's Opinion vacating one ruling in the Court's June 29, 2009 Order granting summary judgment for Defendants on all of Plaintiff's claims. See <u>Fleischer Studios, Inc. v. A.V.E.L.A., Inc.</u>, 654 F.3d 958 (9th Cir. 2011) ("<u>Fleischer II</u>"), *affirming in part and vacating in part* <u>Fleischer Studios, Inc. v. A.V.E.L.A. Inc.</u>, 772 F. Supp. 2d 1155 (C.D. Cal. 2009).

<u>Fleischer II</u> remanded for further proceedings Plaintiff's claim for trademark infringement relating to the word mark "Betty Boop." The Court set out a detailed factual background in its December 16, 2008 and June 29, 2009 Orders. Thus, here, the Court provides only a sketch of the facts, and summarizes the procedural history relevant to the remaining claim.

### A. Factual Overview

This litigation concerns ownership of the intellectual property in the cartoon character Betty Boop. The following facts are undisputed and are adopted from prior orders and the parties' submissions.

Starting in or around 1930, Max Fleischer, then head of Fleischer Studios, Inc. ("Original Fleischer") developed a number of cartoon films featuring the fictional character Betty Boop. For a time, Original Fleischer licensed the Betty Boop image for use in toys, dolls, and other merchandise. Approximately ten years after creating her, Original Fleischer sold its rights to the Betty Boop cartoons and to her character. In 1946, Original Fleischer was dissolved.

Max Fleischer's family attempted to revive the Fleischer cartoon business in the early 1970s. The family incorporated a new entity,

2

Fleischer Studios, Inc. ("Fleischer"), with the same name as the first entity and attempted to repurchase the intellectual property rights to the Betty Boop character. Fleischer is the Plaintiff in this action and is a distinct legal entity from the long-defunct Original Fleischer that first owned Betty Boop.[1] Based on its view that it owns the intellectual property (copyrights and trademarks) in the Betty Boop character, Fleischer licenses the Betty Boop character for use in toys, dolls, and other merchandise.

Defendants, A.V.E.L.A., Inc., et al., also license Betty Boop merchandise such as posters, dolls, and apparel. Defendants' merchandise includes or incorporates elements from vintage Betty Boop movie posters that Defendants argue were in the public domain and that they have restored. As relevant here, the elements derived from the posters include images of Betty Boop, the words Betty Boop, or both.

Plaintiff asserts that Defendants' Betty Boop merchandise is unauthorized and infringes on its rights in the character Betty Boop. Plaintiff therefore pled claims for copyright infringement, trademark infringement, and several related state law claims.

**B.  Procedural History**

In two Orders, the Court, Judge Cooper presiding, granted summary judgment for Defendants. The Court found that Plaintiff held neither

---

[1] The Court is troubled by Plaintiff's casual conflation in its submissions of itself and the unrelated, long-defunct Original Fleischer that initially owned the rights in Betty Boop. See, e.g., Mot. 5:23-26 (stating, "Fleischer Studios' association with Betty Boop began in 1930 when Max Fleischer created a cartoon charater . . ."). As this Court and the Ninth Circuit have noted, the present Fleischer Studios is legally unrelated to the original 1930s Fleischer Studios. Evidently, Plaintiff used this sleight-of-hand in an attempt to persuade the reader that its legal interest in Betty Boop is of longer standing than it actually is. The Court was not persuaded or favorably impressed by this tactic.

a valid copyright nor a valid trademark in the Betty Boop cartoon character. See Order, Dec. 16, 2008 (docket no. 90); and Order, June 29, 2009 (docket no. 105), Fleischer Studios, Inc. v. A.V.E.L.A. Inc., 772 F. Supp. 2d 1155 (C.D. Cal. 2009). As to Plaintiff's trademark claim based on the word mark "Betty Boop", the Court granted summary judgment for Defendants on three grounds. First, the Court found that because of the word mark's fractured history in which "rights. . . were divided and parceled out to various entities over many decades," the mark could not indicate a single source, that is, it could not achieve secondary meaning. Fleischer Studios, 772 F. Supp. 2d at 1171. Thus, the mark was not valid. The Court also held that nothing in the record showed "(b) that any of Defendants' uses of its poster artwork represent a use of Plaintiff's word mark in commerce, or (c) that any of defendants' uses of the word mark are likely to cause consumer confusion." Id. at 1170. Plaintiff appealed.

Initially, the Ninth Circuit upheld Judge Cooper's orders in their entirety. See Fleischer Studios, Inc. v. A.V.E.L.A., Inc., 636 F.3d 1115 (9th Cir. 2011) ("Fleischer I"). However, the Ninth Circuit based its trademark ruling on the doctrine of aesthetic functionality, a theory that none of the parties raised at the district court and that was not a basis for any of Judge Cooper's rulings. Specifically, in Fleischer I, the Court held that Defendant's uses of the Betty Boop trademarks – both the image mark and word mark – were functional and aesthetic, and were not trademark uses; therefore, Defendants' use did not infringe Plaintiff's marks. Plaintiff moved for a rehearing.

The Ninth Circuit then withdrew Fleischer I and issued a new, superceding opinion, Fleischer II, *supra*. In Fleischer II, the Ninth Circuit upheld judgment for Defendants on the copyright claims and on

4

the image mark claims, but vacated the ruling on the word mark claims. With respect to the word mark claims, the Court made the following rulings. The Court held that Plaintiff had "submitted proof that it possesses registered trademarks in the words 'Betty Boop'". Fleischer II, 654 F.3d at 967. The Court also reversed the district court's ruling that the word mark's fractured ownership history precluded secondary meaning, finding that that was a triable issue. Finally, as to the remaining two bases upon which the district court granted summary judgment for Defendants, the Ninth Circuit stated that it was "unable to ascertain a legal basis for the district court's" "unexplained" conclusions that Plaintiff failed to show "'(b) that any of [A.V.E.L.A.'s] uses of its poster artwork represent a use of [Fleischer]'s word mark in commerce, or (c) that any of [A.V.E.L.A.'s] uses of the word mark are likely to cause consumer confusion.'" Id. at 968 (citing Fleischer Studios, 772 F. Supp. 2d at 1170). Because these two bases of the word mark ruling were not explained, the Ninth Circuit concluded "that more is necessary", "vacate[d] the holding on this issue[,] and remand[ed] to the district court for further proceedings on Fleischer's trademark infringement claims regarding the Betty Boop word mark." Fleischer II, 654 F.3d at 968.

**C. Current Proceedings**

The parties disagree about the scope of the remand: Defendants contend that the sole purpose of the remand is for the court to provide the legal reasoning behind the dismissal of Plaintiff's word mark claim; Plaintiff contends that, in effect, it has *carte blanche* to relitigate its word mark claim and present any and all arguments and evidence it has, regardless of whether it presented that material

before or whether the district court previously rejected it.[2]

The Ninth Circuit did not reverse the district court's prior ruling, but remanded because the record was incomplete. However, Fleischer II does not expressly limit the remand to providing the missing reasoning. Nor does Fleischer II require the Court to re-open litigation over this claim entirely, that is, to allow the parties to relitigate the remanded claim anew. It therefore appears that the Court has some discretion as to what "further proceedings" entails and what arguments and evidence it will consider.

Clearly, the Court cannot revisit any matters ruled upon by the Ninth Circuit. Thus, for example, Plaintiff's attempt in its opposition to revive its copyright claims, see Pl.'s Opp'n 12:6-9, is rejected because Fleischer II affirmed the dismissal of those claims. See Fleischer II, 654 F.3d at 965. Similarly, the Court is bound by the Ninth Circuit's acceptance of Plaintiff's "proof that it possesses registered trademarks in the words 'Betty Boop.'" Id. at 967. However, the Court will not consider any arguments that Plaintiff did not present to the district court at the prior proceedings, or that Plaintiff did not pursue on appeal: the Court finds that such matters are waived or abandoned. This includes, for example, the alternative chains of title that Plaintiff abandoned on appeal. That the Court must conduct "further proceedings" on Plaintiff's trademark claim as to the Betty Boop word mark does not allow Plaintiff to present evidence that was previously properly excluded or to revive abandoned

---

[2] The Ninth Circuit upheld the district court's exclusion of the following evidence as untimely: evidence that Plaintiff owned a federally-registered trademark in the image of Betty Boop, and evidence that Fleischer's word mark has achieved incontestible status. See Fleischer II, 654 F.3d at 965-967.

1  arguments.  Fleischer II does not *require* the Court to reconsider any
2  of its prior determinations or to entertain new arguments or evidence,
3  and Plaintiff has not persuaded the Court that it should.
4      Based on the foregoing, these proceedings will be limited to a
5  re-examination of the Court's "unexplained" prior rulings.  This re-
6  examination will be based solely on the evidence previously presented
7  to the district court and preserved on appeal.  This does not
8  necessarily limit the Court to mechanically maintaining its prior
9  ruling and simply providing the reasoning that was missing; the Court
10 could change its ruling.  If the Court changed its ruling, then it
11 would reach the issues of ownership, validity, and unclean hands
12 (among others) that the parties raised in their papers.  But, having
13 reviewed the arguments and evidence, the Court maintains its
14 conclusion that Plaintiff's claims based on the Betty Boop word mark
15 fail because Defendants' use of the mark is not a trademark use, and
16 because Plaintiff has not shown that likelihood of confusion is a
17 triable issue of fact.  As such, the Court will not reach the many
18 other issues the parties raised in their papers.

## II.  DISCUSSION

21     Although difficult to ascertain from Plaintiff's Motion,
22 Plaintiff's remaining claims are for (a) trademark infringement
23 pursuant to 15 U.S.C. § 1114, (b) false designation of origin pursuant
24 to 15 U.S.C. § 1125(a), (c) state law trademark infringement and
25 unfair competition, and (d) deceptive trade practices under California
26 Business and Professions Code § 17200.  The same analysis governs
27 Plaintiff's trademark claims and tag-along state law claims.  Cleary
28 v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit

has consistently held that state common law claims of unfair competition and actions pursuant to [] § 17200 are 'substantially congruent' to claims made under the Lanham Act.").

**A.   Legal Standards**

    **1.   Summary Judgment**

As the party asserting trademark and unfair competition claims, Plaintiff has the burden of proof at trial and the initial burden of production at summary judgment. Defendants may satisfy their initial burden with respect to Plaintiff's claims by "by pointing out that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its initial burden, the nonmoving party must show that there are genuine issues of fact by pointing to conflicting evidence in the record, or by showing that the evidence the movant cites does not support the movant's position. See Fed. R. Civ. P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (citing former Rule 56, which requires non-moving party "to set forth specific facts showing that there is a genuine issue for trial.").

    **2.   Trademark Law**

Trademarks function as a designation of source or origin. See 15 U.S.C. § 1127 (defining "trademark" to include "any word, name, symbol, or device, or any combination thereof – (1) used by a person. . . to identify and distinguish his or her goods. . . from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown"). As the Trademark Trial and Appellate Board has explained:

> The salient question is whether the designation in question, as used, will be recognized in and of itself as an indication of origin for this particular product. That is, does this component or designation create a commercial impression separate and apart from the other material appearing on the label?

The Procter & Gamble Company v. Keystone Automotive Warehouse, Inc., 191 U.S.P.Q. 468, 474 (TT&A Bd. 1976) (emphasis added); see also United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97 (1918) ("There is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed. . . its function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his; and it is not the subject of property except in connection with an existing business.").

When, as here, trademark and unfair competition claims under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) are based on the same infringing conduct, courts apply the same analysis to both claims. E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1288 n. 2 (9th Cir.1992). To prove a claim for trademark infringement or unfair competition, a party must establish: (1) ownership of the trademark at issue; (2) use by defendant, in commerce, without authorization, of the plaintiff's mark; and (3) that defendant's use of the mark is likely to cause confusion. 15 U.S.C. § 1114(a). See also Brookfield Communications, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999)

("[Plaintiff] must establish that [Defendant] is using a mark confusingly similar to a valid, protectable trademark of Brookfield's.").

**B.    Defendants' Use of the Betty Boop Word Mark is Not Infringing.**

Defendants argue that they cannot be liable for trademark infringement because their use of the words Betty Boop is not a trademark use.  This echoes the Court's finding in its June 2009 Summary Judgment Order that Plaintiff did not show that any of Defendants' artwork represented a use of Plaintiff's word mark in commerce.  While that order did not provide much reasoning for this conclusion, the Ninth Circuit in Fleischer I did.  Although the Ninth Circuit withdrew Fleischer I and remanded the case, the reasoning set forth in Fleischer I is nevertheless sound and applicable.

**1.    Defendants' Use of the Mark is Aesthetically Functional.**

This analysis rests on the aesthetic functionality doctrine adopted by the Ninth Circuit in International Order of Job's Daughters v. Lindeburg & Co., 633 F.2d 912 (9th Cir. 1980), and clarified in Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062 (9th Cir. 2006).[3]

In Job's Daughters, the defendant jeweler produced rings and pins that bore a fraternal organization's trademarked insignia.  The Ninth

---

[3] Although the parties did not raise this theory in the prior district court proceedings, it was put in issue by Fleischer I and the parties properly briefed and addressed it in the present papers. Plaintiff stridently contends that the aesthetic functionality doctrine is not viable in this circuit.  Indeed, there appears to be some confusion applying the doctrine, perhaps stemming from the semantics of the phrase "aesthetic functionality".  However, it is clear from Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc., 457 F.3d 1062 (9th Cir. 2006) that, although the doctrine has limited application, it is nevertheless viable.

Circuit examined whether that use was an actionable "trademark use" or some other kind of use. Because trademark law is concerned only with identification of the maker of the product so as to avoid confusing consumers, it "does not prevent a person from copying so-called 'functional' features of a product which constitute the actual benefit that the consumer wishes to purchase, as distinguished from an assurance that a particular entity made, sponsored, or endorsed a product." Job's Daughters, 633 F.2d at 917.

To determine whether a use is an "aesthetically functional" use or a trademark use, "a court must closely examine the articles themselves, the defendant's merchandising practices, and any evidence that consumers have actually inferred a connection between the defendant's product and the trademark owner." Id. at 919. After considering these factors, the Court concluded that although the insignia at issue was in fact trademarked by the organization Job's Daughters, nothing about the jeweler's use of the mark would have led a "typical consumer. . . to infer[] from the insignia that the jewelry was produced, sponsored, or endorsed by Job's Daughters." Id. at 919. Because customers evidently purchased the insignia only for its value as a symbol and not because they believed the organization endorsed the jewelry, the jeweler's use of the Job's Daughters mark was functional, and not a potentially infringing trademark use.

In Au-Tomotive Gold, the Court discussed the development of the doctrine and set out a two-step test for aesthetic functionality. First, to ascertain "functionality," the court must ask whether the alleged "significant non-trademark function" of the mark "[is] essential to the use or purpose of the article [or] affects [its] cost or quality." Au-Tomotive Gold, 457 F.3d at 1072 (citation omitted).

11

If so, then the feature is functional in the utilitarian sense and cannot trigger liability for infringement. If not, the mark is non-functional and may trigger liability. However, where the claim is one for *aesthetic* functionality, one additional question applies: the court should determine if "protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." Id. If so, the mark is *aesthetically* functional and does not trigger liability for infringement.

While "[t]he concept of an 'aesthetic' function that is non-trademark-related has enjoyed only limited application," it is nevertheless a viable theory. Id. at 1073. "In practice, aesthetic functionality has been limited to product features that serve an aesthetic purpose wholly independent of any source-identifying function." Id. Thus, although Au-Tomotive Gold and Job's Daughters use somewhat different language to describe the test for aesthetic functionality, the focus of the inquiry turns on whether the use of the mark has a source-identifying or "reputation-related" function. If not, then the use may be "aesthetically functional" and is not a trademark use.

Consistent with Job's Daughters, the Court has closely examined Defendants' products, Defendants' merchandising practices insofar as they are reflected in the record, and whether there is any evidence that consumers have connected Defendants' products with Plaintiff. The Court finds, as a matter of law, that Defendants' use of the Betty Boop word mark is not a trademark use. As in Job's Daughters, Defendants use the words Betty Boop as a prominent feature on their product, including t-shirts bearing movie poster images, dolls, and packaging adapted from movie posters. In this regard, the Betty Boop

mark as adapted from the restored Betty Boop posters is a decorative component: it is part and parcel of the aesthetic design of those goods.  As for Defendants' merchandising practices, Defendants never designated their merchandise as "official" or otherwise indicated sponsorship by Plaintiff; rather, Defendants' products all identify one of Defendants as their source.  Considering that Defendants use the words Betty Boop as an artistic design element and identify themselves as the source of the goods, their use of the words Betty Boop simply cannot be viewed as source-identifying.  Indeed, Plaintiff has not presented a single instance of a consumer who was misled about the origin or sponsorship of Defendants' products.

These same considerations show that Defendants' use of the Betty Boop word mark is aesthetically functional within the parlance of <u>Au-Tomotive Gold</u>.  The Court assumes that Defendants' use of the word mark Betty Boop is not functional in the utilitarian sense because Defendants' goods would still function the same way without those words: their t-shirts would still be wearable, and their dolls would still be toys were they stripped of the words "Betty Boop."

The Court therefore turns to whether the mark is nevertheless *aesthetically* functional.  Because, as noted above, Defendants' use of the mark is a decorative feature of their merchandise and is not source-identifying, "protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage" on Defendants.  Were Defendants to market their goods bearing the image of Betty Boop or Betty Boop movie posters without the words Betty Boop to identify the character, that would make their products less marketable than the same product that included the BETTY BOOP name.  This is because the words Betty Boop serve to name the famous

character depicted on those goods and are part and parcel of the movie posters printed on Defendants' merchandise. For example, Plaintiff points to one of Defendants' dolls that includes packaging bearing imagery from a Betty Boop movie poster, and a product tag that is a miniature reproduction of the movie poster. Both uses of the poster imagery bear the following text: "Adolph Zukor presents BETTY BOOP with HENRY the Funniest Living American". See Pl.'s Mot. P. 3, Opp'n p. 17. Removing the words BETTY BOOP from these items would render the textual aspect of the poster reproductions incomplete and the remaining words would be nonsensical. It would be obvious to the average consumer that such merchandise would be missing something. Clearly, merchandise that is missing something is less marketable and therefore at a competitive disadvantage. In addition, because Defendants' use of the Betty Boop word mark is not source identifying and simply does not trade on the "reputation" of any source, barring Defendants from using those words would "impose a significant non-reputation-related competitive disadvantage."

For the foregoing reasons, there is no triable issue of fact as to whether Defendants' use is a trademark use; instead, as a matter of law, Defendants' use of the Betty Boop mark is an aesthetically functional use, and not a source-identifying trademark use; such uses are not infringing.

**2. Alternatively, Defendants' Use of the Mark is Fair Use.**

If Defendants' use of the mark is not aesthetically functional, then it is "fair use". The Lanham Act provides that fair use is a defense to trademark infringement. "Fair use" is defined as "the use, otherwise than as a mark,. . . of a term [] which is descriptive of and used fairly and in good faith only to describe the goods or

14

services of [the] party." 15 U.S.C. § 1115(b)(4). The fair use defense applies when a mark is used in its primary descriptive sense rather than its secondary trademark sense. See Cairns v. Franklin Mint Co., 292 F.3d 1139, 1150 (9th Cir. 2002) ("Under the common law classic fair use defense . . . [a] junior user is always entitled to use a descriptive term in good faith in its primary, descriptive sense other than as a trademark.") (quoting 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARK AND UNFAIR COMPETITION § 11:45 (4th ed. 2001)). "For a word or mark to be considered descriptive it merely needs to refer to a characteristic of the product." Sunmark, Inc. v. Ocean Spray Cranberries, Inc., 64 F.3d 1055, 1059 (7th Cir. 1995). For example, the maker of cranberry juice could use the words "sweet-tart" in advertising to describe the flavor of its juice over the objection of the owner of SWEETARTS candy. Id. at 1058 ("That SweeTARTS is an incontestable mark for sugar candy does not make Sunmark the gatekeeper of these words for the whole food industry."). The court will address each of the three elements of fair use in turn.

The purpose of trademarks is to designate source or origin. See 15 U.S.C. § 1127. Thus, whether a use is "otherwise than as a mark" depends on several factors, including "whether the term is used as a 'symbol to attract public attention' [and] whether the allegedly infringing user undertook 'precautionary measures such as labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense.'" Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1040 (9th Cir. 2010) (citations omitted). Here, Defendants use the phrase Betty Boop in connection with their products bearing the image of Betty Boop. It is extremely unlikely that a prospective consumer would

understand those words as identifying the source of the goods rather than merely naming the character. Also, the words Betty Boop as used here are not symbols at all, but they comprise the exact name of the character. Defendants also took the precautionary measure of indicating themselves as the source of their goods. Defendants have presented no contrary evidence. As a matter of law, Defendants use the words Betty Boop "otherwise than as a mark."

     Similarly, there is no triable issue of fact as to whether Defendants are using the words in their primary, descriptive sense. Defendants' use has "descriptive purity" and there are no "other words available to do the describing." Fortune Dynamic, 618 F.2d at 1041. The words "Betty Boop" used on goods bearing the image of the character Betty Boop self-evidently describe those goods, and are not referring to something else. This contrasts with the descriptive "impurity" noted in Fortune Dynamic. There, the Ninth Circuit found that Victoria's Secret's use of the word "delicious" in connection with its flavored lip gloss was not descriptively pure because it arguably referred not only to the goods (lip gloss), but, according to Victoria's Secret's own executives, could also refer to the wearer of the lip gloss. Id. at 1041. Thus, "delicious" did not refer purely to the goods, but also perhaps to the wearer. Here, it is hard to imagine what else the words Betty Boop could refer to other than the character depicted on the goods. In addition, there are no words other than "Betty Boop" available to describe or name the character Betty Boop. As noted above, these proceedings have already established that Defendants may so use the character over Plaintiff's objection; Defendants must also, therefore, be able to identify this character by name.

1    Finally, no jury could conclude that Defendants use the words
2 Betty Boop in bad faith.  This factor is similar to the intent factor
3 in the likelihood of confusion analysis: "whether defendant in
4 adopting its mark intended to capitalize on plaintiff's good will."
5 <u>Fortune Dynamic</u>, 618 F.3d at 1043.  Because Defendants are not using
6 the mark as a source-identifier and in fact identify themselves as the
7 source of the goods, they did not use the mark intending to capitalize
8 on Plaintiff's good will.
9    In short, when any of Defendants' products are viewed as a whole,
10 it is clear that the phrase Betty Boop describes or identifies by name
11 the character Defendants depict on their products, that is, that this
12 use is "otherwise than as a mark," descriptive, and not in bad faith.
13    The Court has reviewed all of the examples of Defendants'
14 products presented in the briefs, and nothing about Defendants' use of
15 the word mark Betty Boop can be considered source-identifying; for the
16 reasons set out above, those uses are, as a matter of law, either
17 aesthetically functional or fair use.  Whether Defendants' use of the
18 word mark fits within the aesthetic functionality doctrine, or,
19 alternatively, is fair use, the ultimate conclusion is the same:
20 Defendants' use does not indicate a source or origin of the products,
21 and is therefore not a trademark use.  A non-trademark use cannot be
22 infringing, so Plaintiff's claims fail.

**D.   Plaintiff has Not Shown a Triable Fact as to Likelihood of Confusion.**

   "The test for a likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." <u>Dreamwerks Prod. Grp., Inc. v. SKG Studio</u>, 142 F.3d 1127, 1129 (9th

Cir. 1998). Ordinarily, courts apply the eight-factor *Sleekcraft* test to determine whether likelihood of confusion is a triable issue of fact. See AMF, Inv. v. Sleekcraft Boats, 599 F.2d 341, 348049 (9th Cir. 1979). However, the Court finds it unnecessary to reach the *Sleekcraft* factors here. "A *requirement of trademark use is implicit in the requirement that there be a likelihood of confusion for infringement to occur*.". See, e.g., MCCARTHY ON TRADEMARK, supra, § 23:11.50 (emphasis added). Indeed, the *Sleekcraft* test's language reflects the assumption that the putative infringer's use is a trademark use. For example, the factors include the degree of similarity *of the marks* and the defendant's intent in using *the mark*. As discussed above, Defendants' use of the phrase Betty Boop is not a source-identifying – that is, trademark – use. Because Defendants' use of the words Betty Boop does not indicate the origin of the goods, Defendants' use cannot create the impression that these goods originate with anyone in particular, and cannot therefore create a likelihood of confusion that Defendants' goods originate from Plaintiff.

The Court notes Plaintiff's contention that the doctrine of legal equivalents applies in this case. This doctrine recognizes that words and pictures that have the same meaning can be confusingly similar. Thus, a word mark can infringe a picture mark if the word mark evokes the picture mark, and a picture mark can infringe a word mark where the picture is a depiction of the word. See, e.g., Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254 (2d Cir. 1987) (upholding district court finding that consumers would likely confuse defendant's word mark PEGASUS with plaintiff's picture mark of a flying horse). The Trademark Trial and Appeal Board has stated that, "It is

established that where a mark comprises a representation of an animal or individual and another mark consists of the name of that animal or individual, such designations are to be regarded as legal equivalents in determining likelihood of confusion under the Trademark Act." Squirrel Brand Co. v. Green Gables Inv. Co., 223 U.S.P.Q. 154 (T.T.A.B. 1984) (SQUIRREL and picture of squirrel held equivalent for food products).

Plaintiff argues that the picture mark Betty Boop is the legal equivalent of the word mark Betty Boop, and that therefore the Court "should find for purposes of determining a likelihood of confusion, [that] the well-delineated image of Betty Boop is equivalent to Fleischer Studios' registered BETTY BOOP word marks." Pl.'s Mot. 14:25-28.

As the Betty Boop image mark is a representation of the Betty Boop character, and the Betty Boop word mark is that character's name, it is self-evident that these marks *could be* considered legal equivalents. But Plaintiff does not show how this helps its case. Importantly, "the question of confusing similarity does not arise unless the defendant's use of the picture in question is in a trademark manner." 3A CALLMANN ON UNFAIR COMP., TR. & MONO. § 21:35 (4th Ed.). Thus, the Second Circuit found that the word mark Babe Ruth was not infringed by the non-trademark use of photographs of the baseball player Babe Ruth. See Pirone v. MacMillan, Inc., 894 F.2d 579 (2d Cir. 1990).

Plaintiff has not even argued, let alone shown, that Defendants' use of the Betty Boop image is a trademark use such that it may be deemed the legal equivalent of the Betty Boop word mark. For example, those cases in which "the owner of a word mark received protection

19

against infringing use of a picture mark, or vice versa, involved a true picture mark, a single pictorial representation used repeatedly as an indication of origin." Pirone, 894 F.2d at 582. Here, Betty Boop does not look the same on all of Defendants' goods, so her image does not appear to be a "true picture mark." In addition, for all of the reasons Defendants' use of the word mark is not source-identifying, Defendants' use of the image is not source-identifying, and is not a trademark use. Thus, Defendants' use of the Betty Boop image does not trigger the doctrine of legal equivalents.

Accordingly, the Court concludes that, as a matter of law, Defendants' non-trademark use of the Betty Boop word mark and image cannot give rise to any likelihood of consumer confusion over the source of Defendants' goods.

### III. CONCLUSION

For the foregoing reasons, the Court find that, as a matter of law, Defendants are not using the words "Betty Boop" or the image of Betty Boop as a trademark; therefore, Defendants have not infringed Plaintiff's Betty Boop word mark. Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendants' Motion for Summary Judgment. Defendants are ordered to lodge a Proposed Judgment within ten (10) days of the issuance of this Order.

**IT IS SO ORDERED.**

**DATED: November 14, 2012**

_____
**AUDREY B. COLLINS**
**UNITED STATES DISTRICT JUDGE**